**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**GREGORY ANTHONY MALONE**                                                          **PLAINTIFF**

**v.**                                                                              **No. 3:24CV312-JMV**

**SUPERINTENDENT CHRIS LODEN, ET AL.**                                              **DEFENDANTS**

**ORDER FOR THE PLAINTIFF TO *SHOW CAUSE*, WITHIN 21 DAYS,**
**WHY HIS DUE PROCESS AND TAKING OF PROPERTY CLAIMS SHOULD**
**NOT BE DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM**
**UPON WHICH RELIEF COULD BE GRANTED; *SETTING 21-DAY DEADLINE***
**TO SUPPLEMENT COMPLAINT WITH FACTS TO SUPPORT HIS**
**ALLEGATIONS REGARDING LONG-TERM ISOLATION**

This matter comes before the court on the *pro se* prisoner plaintiff's complaint filed under 42

U.S.C. § 1983. The plaintiff claims that: (1) Multiple administrative errors led to a finding of guilt on

several prison rule violations in contravention of his Fourteenth Amendment right to due process; (2)

The defendants took his personal property without due process of law; (3) The defendants placed him

in isolation for days and weeks at a time in violation of the Eighth Amendment prohibition against

cruel and unusual punishment; (4) The defendants violated his First Amendment rights regarding

freedom of association and the right to peaceably assemble by issuing a rule violation for playing

cards with gang members; and (5) The defendants violated his Fourteenth Amendment right to equal

protection of the laws when, among the various other inmates charged in the incident giving rise to the

Rule Violation Reports, he, alone, was punished by a reduction in custody level, transfer to another

facility, and placement in the Security Threat Group program.

It appears that the following claims should be dismissed for failure to state a valid cause of

action under 42 U.S.C. § 1983 (as numbered above): (1) Violation of due process during the rule

violation process; (2) Violation of due process as to the taking of his personal property; (4) Violation

of the rights of freedom of association and freedom to peaceably assemble by issuing and prosecuting a rule violation (for allegedly playing cards with gang members); and (5) Violation of equal protection for transferring the plaintiff, alone, to another facility and placing him in the Security Threat Group ("STG") program, even though other inmates were also subjects of the investigation. In addition, the plaintiff has not alleged sufficient facts to state a valid § 1983 claim regarding his allegation (3) that his placement in isolation violates that Eighth Amendment prohibition against cruel and unusual punishment.

## Summary of Allegations

The plaintiff alleges that, during his stay at the Marshall County Correctional Facility, he received five prison Rule Violation Reports (RVR) as a result of a March 12, 2024, shakedown of his unit. He received RVR No. 2077888 (involvement in disruptive, assaultive, or criminal gang activity); RVR No. 2077570 (possession of major contraband); RVR No. 2077571 (possession of major contraband); RVR No. 2077572 (possession of major contraband); and RVR No. 2077573 (possession of major contraband). Other inmates were similarly charged.

RVR No. 2077570 was dismissed, and No. 2077573 was overturned on appeal. As such, only RVR Nos. 2077888 (gang activity), 2077571 (contraband), and 2077572 (contraband) are at issue in the instant case. Malone was found guilty of these three rule violations. Some of his personal property was confiscated, allegedly as contraband.[1] As a result of the guilty findings, he received the following punishments:

RVR 2077888 – 60 days loss of canteen and visitation, as well as recommendation for reclassification;

RVR 2077571 – 180 days loss of canteen and visitation;

---

[1] For the purposes of this Show Cause Order only, the court will assume that the items confiscated were not contraband.

RVR 2077572 – 180 days loss of canteen and visitation.

Docs. 1-1, 1-3, 1-4 .

As a result of the three rule violations, Malone complains that he, alone, faced additional administrative repercussions – reduction in custody classification, transfer to the Walnut Grove Correctional Facility, and placement in the STG program – but the defendants did not take those actions against the other inmates. He also alleges that he has been "locked in a cell 24 hours a day for days and weeks at a time." Doc. 1 at 16. He further alleges that, as a result of these events, he has suffered a mental decline, difficulty sleeping, and stress sufficient to cause a drop in heart rate requiring transfer to a hospital.

## Legal Claims

As noted, the plaintiff challenges the merits of the three remaining RVRs.[2] He also claims that multiple administrative errors led to the finding of guilt – in violation of his right to due process. In addition, he claims that his personal property was taken from him without due process of law. He also claims that his placement in isolation violates the Eighth Amendment prohibition against cruel and unusual punishment. He claims that playing cards with other inmates cannot be prohibited because that would violate his First Amendment rights of freedom of assembly and freedom of association. Finally, he claims that the defendants' decision to take administrative action against him for the infractions, while not doing so against the others involved in the same events, violates his Fourteenth Amendment right to equal protection of the laws. The court will discuss these claims, in turn, below.

---

[2] A violation of prison rules involves only state law, not federal law. As such, the plaintiff's allegation of error in determining the merits of several appeals prison rule violations (state law issues) does not give rise to a valid claim under 42 U.S.C. § 1983 (which involves only violations of federal law.)

### *Sandin v. Conner*:  Due Process
### Regarding Prison Rule Violations

Under the ruling in *Sandin v. Conner*, 515 U.S. 472 (1995), the plaintiff has not set forth a

valid claim for violation of the Due Process Clause regarding alleged administrative errors resulting in

guilty findings on the three relevant RVRs.  Under *Sandin*, though

> [s]tates may under certain circumstances create liberty interests which are protected by
> the Due Process Clause, . . . these interests will be generally limited to freedom from
> restraint which, while not exceeding the sentence in such an unexpected manner as to
> give rise to protection by the Due Process Clause of its own force . . . nonetheless
> imposes atypical and significant hardship on the inmate in relation to the ordinary
> incidents of prison life.

*Id.* 115 S. Ct. at 2300 (citations omitted).

In *Sandin*, the discipline administered the prisoner was confinement in isolation.  *Id.*  The

court found that this discipline fell "within the expected parameters of the sentence imposed by a court

of law," and "did not present the type of atypical, significant deprivation in which a State might

conceivably create a liberty interest."  *Id.* at 2301 and 2300.  Therefore, neither the Due Process

Clause itself nor State law or regulations gave rise to a liberty interest providing the constitutional

procedural protections afforded prisoners.[3]  *Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000)

---

[3] Though not an exhaustive list, courts have recognized the following due process
protections (which a prisoner does not enjoy unless the punishment is severe enough to trigger
such protections under *Sandin*):

    (1)  Advanced written notice of the claimed violation;

    (2)  A written statement of the factfinders as to the evidence relied upon and the reasons for the
          disciplinary action taken;

    (3)  The ability to call witnesses (which can be limited at the discretion of prison officials for
          security and other reasons);

    (4)  The ability to present documentary evidence.

*Wolff v. McDonnell*, 418 U.S. 539, 563-567 (1974).  Confrontation and cross-examination of adverse
witnesses is not a right enjoyed by prisoners.  *Id.* at 567.

(holding prisoner's thirty-day loss of commissary privileges and cell restriction due to disciplinary action failed to give rise to due process claim).

In the present case, the plaintiff's punishment was loss of canteen and loss of visitation. Such punishment clearly falls "within the expected parameters of the sentence imposed by a court of law," *id*. at 2301, and "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id*. Thus, these punishments were not severe enough to trigger due process protections. As such, the plaintiff's allegations regarding violation of his right to due process during the prison grievance process are without merit, and it appears that they should be dismissed with prejudice for failure to state a claim upon which relief could be granted.

### Taking of a Prisoner's Property Without Due Process of Law[4]

The plaintiff also alleges that the defendants "stripped [him] of all personal property" without due process of law. Doc. 1, p. 15. He has not identified or described the individual items confiscated. As discussed below, it appears that this allegation also fails to state a valid § 1983 claim. The random and unauthorized deprivation of a prisoner's property by a state actor does not violate the prisoner's due process rights if the state provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). This rule, the *Parratt-Hudson* doctrine, provides "that no constitutional claim may be asserted by a plaintiff who was deprived of his liberty or property by negligent or intentional conduct of public officials, unless the state procedures under which those officials acted are unconstitutional *or* state law fails to afford an adequate post-deprivation remedy for their conduct." *Martin v. Dallas County, Tex.*, 822 F.2d 553, 555 (5th Cir. 1987) (emphasis added); *see*

---

[4] The court discusses separately the issue of due process protections regarding the taking of an inmate's *property* – because that analysis is distinct from the one regarding due process protections of *liberty* under *Sandin*.

*also Hudson*, 486 U.S. at 533, *Daniels*, 474 U.S. at 330-31; *White v. Epps*, 411 Fed.Appx. 731 (5ᵗʰ Cir. 2011). Thus, the plaintiff may prevail on this claim only if he can show either that an unconstitutional state procedure was used to confiscate his property – or that there is no adequate post-deprivation remedy for the taking.

The plaintiff has not alleged that an unconstitutional prison procedure was used to confiscate his property. Hence, the threshold question as to the plaintiff's claim regarding the taking of his property is whether Mississippi law affords him an adequate post-deprivation remedy for his loss.

In most circumstances, suits against the Mississippi government would be controlled by the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-9 ("MTCA"). As to suits filed by prisoners, the MTCA states:

> (1) A governmental entity and its employees acting and within the course scope of their employment or duties shall not be liable for any claim:
>
> . . .
>
> (m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed.

Miss. Code Ann. § 11-46-9(1)(m).

At first blush, this statute would seem to foreclose any remedies the plaintiff may have under state law. However, the plaintiff's state court remedy for the taking of property arises directly from the Constitution of the State of Mississippi, which cannot be circumvented through a state statute. *Pickering v. Langston Law Firm, P.A.*, 88 So.3d 1269 (Miss. 2012). The unlawful taking of an inmate's property can violate Article 3, Section 17 of the Constitution of the State of Mississippi. *Bishop v. Reagans*, 2012 WL 1804623 (S.D. Miss.), *citing Johnson v. King*, 85 So.3d 307 (Miss.Ct.App. 2012). Article 3, Section 17 of the Mississippi Constitution reads:

> Private property shall not be taken or damaged for public use, except on due

> compensation being first made to the owner or owners thereof, in a manner to be
> prescribed by law; and whenever an attempt is made to take private property for a use
> alleged to be public, the question whether the contemplated use by the public shall be
> a judicial question, and, as such, determined without regard to legislative assertion that
> the use is public.

The Mississippi Constitution is the ultimate authority regarding Mississippi state law issues.

The circumstances in *Johnson* are analogous those in the instant case. The prison officials in that case confiscated Johnson's drinking mug and disposed of it. *Johnson v. King*, 85 So.3d 307, 311-312 (Miss. App. 2012). Johnson had purchased the mug from the canteen with his own money. *Id*. The mug as purchased was not considered contraband, and Johnson had not modified the mug in such a way to turn it into contraband. *Id*. The Mississippi Court of Appeals held that, under these circumstances, the taking of Johnson's mug violated the Mississippi Constitution and that prison officials had to either replace the mug or compensate Johnson for the fair value of the mug. *Id*.

Those facts mirror the facts in the present case. Prison officials confiscated Malone's property, did not return it, and he has not alleged that it was confiscated as contraband. As such, the plaintiff in this case has an adequate remedy under state law, and it appears that his claims for the taking of his property without due process of law must be dismissed.

### First and Fourteenth Amendment Right to Freedom of Peaceable Assembly in the Prison Context

By the very nature of incarceration, prisoners enjoy far fewer rights and privileges than do free world citizens:

> Many of the liberties and privileges enjoyed by other citizens must be surrendered by
> the prisoner. An inmate does not retain rights inconsistent with proper incarceration.
> *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125, 97 S.Ct.
> 2532, 53 L.Ed.2d 629 (1977); *Shaw v. Murphy,* 532 U.S. 223, 229, 121 S.Ct. 1475,
> 149 L.Ed.2d 420 (2001). And, as our cases have established, freedom of association is
> among the rights least compatible with incarceration. *See Jones, supra,* at 125–126,
> 97 S.Ct. 2532; *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).
> Some curtailment of that freedom must be expected in the prison context.

- 7 -

*Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003). This principle informs the remaining discussion of the right to peaceably assemble.

The right to peaceably assemble may be found in the First Amendment to the Constitution: "Congress shall make no law … abridging … the right of the people peaceably to assemble …." U.S. Const. am. I. Justice Marshall has expounded upon this principle:

> When a citizen is "in a place where [he] has every right to be," *Brown v. Louisiana,* 383 U.S. 131, 142, 86 S.Ct. 719, 724, 15 L.Ed.2d 637 (1966) (opinion of Fortas, J., joined by Warren, C.J., and Douglas, J.), he cannot be denied the opportunity to *express his views* simply because the government has not chosen to designate the area as a forum for public discussion.
>
> While the right to conduct *expressive activities* in such areas as streets, parks, and sidewalks is reinforced by their traditional use for purposes of assembly, *Hague v. CIO,* 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939) (opinion of Roberts, J., joined by Black, J.), that right ultimately rests on the principle that "one who is rightfully on a street *which the state has left open to the public* carries with him there *as elsewhere* the constitutional right to express his views in an orderly fashion." *Jamison v. Texas,* 318 U.S. 413, 416, 63 S.Ct. 669, 671, 87 L.Ed. 869 (1943) (emphasis added). Every citizen lawfully present *in a public place* has a right to engage in peaceable and orderly *expression* that is not incompatible with the primary activity of the place in question, whether that place is a school, a library, a private lunch counter, the grounds of a statehouse, the grounds of the United States Capitol, a bus terminal, an airport, or a welfare center.

*United States v. Grace*, 461 U.S. 171, 184–85, 103 S. Ct. 1702, 1710–11, 75 L. Ed. 2d 736 (1983) (emphasis added) (footnotes omitted) (Marshall, J., concurring).

Thus, two defining characteristics of the right to peaceably assemble are the intention to express oneself – and to do so in a public place. *Id.* This freedom is not, however, without limits, as "[t]he basic right to freedom of speech and freedom to peaceably assemble must, on occasions, be subordinated to other values and considerations." *Clemmons v. Cong. of Racial Equal.*, 201 F. Supp. 737, 747–48 (E.D. La. 1962), *citing Dennis v. United States*, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137, 342 U.S. 842, 72 S.Ct. 20, 96 L.Ed. 636 and, 355 U.S. 936, 78 S.Ct. 409, 2 L.Ed.2d 419; *Poulos*

*v. State of New Hampshire*, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed.2d 1105, 30 A.L.R.2d 987. This principle applies with greater force in the prison context.

In the present case, the plaintiff's allegations fail to state a claim regarding the right to peaceable assembly because: (1) a prison is not a public place, and (2) playing cards is not a means to express his views. Hence, the allegations simply do not describe a violation of the right to peaceable assembly.

In addition, even if the allegations supported such a claim, prison officials have wide latitude to restrict inmates' liberty in this way. *Overton, supra*. Indeed, courts must give great deference to prison officials' decisions as to prison security and other matters regarding the day-to-day operation of the prison. *See Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir. 2003) ("Prison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order." (citation omitted)). Prison officials have a strong institutional security interest in preventing gang members from gathering. Further, the court is loath to second-guess prison officials' determinations regarding which inmates are members of a gang and what gatherings and activities by those members may pose a security threat.

For these reasons, the facts of this case do not appear to implicate the right to peaceably assemble, and it appears that this allegation should be dismissed for failure to state a valid constitutional claim.

**First and Fourteenth Amendment Right to Freedom of Association**

It appears that the plaintiff's allegations regarding violation of the right to freedom of association should likewise be dismissed. Freedom of association is not explicitly enumerated in Constitution; however, it is a right included within the "penumbra" of the First Amendment. *See McDonald v. Grand Traverse County Election Com'n*, 255 Mich. App. 674, 662 N.W.2d 804 (2003).

Freedom of association comprises: (1) the right to associate to achieve economic goals or other goals not connected with a constitutional right; (2) the right to enter into and maintain certain *intimate* human relationships, and (3) a right to associate for the purpose of engaging in those activities protected by the First Amendment, including speech, assembly, petition for the redress of grievances, and the exercise of religion. *See* The Three Separate Aspects of the Right of Association, 5 Treatise on Const. L. § 20.41(b); *see also* 16A Am. Jur. 2d Constitutional Law § 578. The freedom of association operates on a continuum, from least protected to most protected form of association. The Continuum of Associational Rights, 5 Treatise on Const. L. § 20.41(e). Association for business interests (or other concerns not involving constitutional rights) would require the least protection, while association for intimate relationships – or to exercise a constitutional right – would be most protected. *Id.* The right of association may appear in many forms. *Id*.

In this case, it appears that Malone's allegations do not state a valid claim for violation of his right to freedom of association. One does not associate with others to play cards in order to achieve economic or other goals, to enter into or maintain an intimate relationship (such as marriage or family connections), or to engage in First Amendment activities. As such, the plaintiff's allegations do not fall within the ambit of freedom of association. In addition, as with right to freedom to peaceably assemble, prison officials may severely restrict an inmate's freedom of association. *See Overton, supra.* Indeed, "freedom of association is among the rights *least* compatible with incarceration." *Id*. (emphasis added)

As with Malone's claim regarding the right to freedom of assembly, discussed above, the court will afford wide deference to prison officials' decisions regarding the gathering of inmates – and will not second-guess officials' determination of which inmates are gang members. Malone's allegations do not constitute a claim for freedom of association, and, even if they did,

the court must give great deference to prison officials' decisions regarding institutional security. For these reasons, it appears that the plaintiff's allegations regarding violation of his right to freedom of association must fail.

## Equal Protection

The plaintiff alleges that the defendants violated his right to equal protection of laws because he received a more severe punishment for rule violations than other inmates involved in the same activity. Doc. 1, p. 15-16. As discussed below, it appears that his allegations fail to state a valid equal protection claim.

Put simply, the equal protection clause directs states to treat all similarly situated persons alike. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). A state government can violate the Equal Protection Clause only by intentional discrimination. *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir.1988). "Discriminatory purpose . . . implies more than intent as violation or as awareness of consequences[.] . . . It implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group[.]" *Id.* (internal quotations, citations, and footnote omitted) (emphasis in opinion). A violation of the equal protection clause can occur only when the governmental action in question classifies or distinguishes between two or more relevant persons or groups. *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir.1988). To state a claim under the Equal Protection Clause, a plaintiff suing under 42 U.S.C. § 1983 must allege that a state actor intentionally discriminated against him *because of his membership in a protected class*. *Williams v. Bramer*, 180 F.3d 699 (5th Cir. 1999).

The plaintiff's equal protection claim in this case must therefore fail, as he has not identified "two or more relevant persons or groups" which the government has classified and treated differently

– and to the plaintiff's detriment. *Vera v. Tue*, 73 F.3d 604, 609-10 (5th Cir. 1996). The only difference between the groups Malone has described was their punishments for events giving rise to the rule violations. He has not alleged that he was a member of a protected class – and that he was treated more harshly than people who are not members of that protected class. Nor has he alleged that "the [defendants] singled out a particular group for disparate treatment and selected [the] course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group[.]" *Lavernia supra*.

For these reasons, it appears that the plaintiff's allegations regarding different punishments for inmates involved in the same incident should be dismissed for failure to state a claim upon which relief could be granted.

**Placement in Isolation**

The plaintiff alleges that he was placed in isolation 24 hours per day for weeks and months at a time. Doc. 1, p. 16. Malone has not, however, described the conditions of his placement in isolation, which bear on the resolution of his claim. Examples conditions to consider are: whether the cell had a solid door; whether he was able to communicate with other inmates while in his cell; whether he had a chance to interact with other inmates during any time out of his cell; whether he had visitation; whether he enjoyed any privileges or programs (religious gatherings, education or vocation instruction, access to a telephone, access to reading materials, etc.); how often he was able to shower; and other considerations. *See Bailey v. Fisher*, 647 F. App'x 472, 475 (5th Cir. 2016) (not reported). Nor has Malone identified the duration and approximate dates of each instance of his placement in isolation. *Id.* Other factors to consider are whether the defendants conducted periodic reviews to determine whether he could be placed in less restrictive housing – and whether his placement in

isolation potentially affected his eligibility for parole. *See Wilkinson v. Austin*, 545 U.S. 209, 224, 125 S. Ct. 2384, 2395, 162 L. Ed. 2d 174 (2005).

The Fifth Circuit has suggested that two-and-a-half years may operate as a threshold to determine whether placement in isolation is atypical. *Wilkerson v. Goodwin*, 774 F.3d 845, 855 (5th Cir. 2014). For this reason, it may well be that the plaintiff's allegation of placement in isolation for "weeks and months at a time" would fail to state a claim "under even the most isolated of conditions." *See Bailey, supra*, at 476. In any event, Malone has not provided sufficient factual detail to support his claim regarding placement in isolation.

### Conclusion

The court has set forth the reasons why it appears that four of the plaintiff's claims should be dismissed with prejudice – and why, as to the remaining claim – the plaintiff's factual allegations are insufficient to support a claim under 42 U.S.C. § 1983. The court will thus provide the plaintiff an opportunity to present argument in support of moving forward on the four claims, as well as to flesh out his allegations regarding the remaining claim so that the court may conduct its initial review.

### 21 Days to Respond to the Instant Show Cause Order

As such, the plaintiff is **ORDERED** to **SHOW CAUSE**, within 21 days, why the following allegations should not be dismissed with prejudice for failure to state a claim upon which relief could be granted: (a) Multiple administrative errors leading to a finding of guilt on several prison rule violations in contravention of his Fourteenth Amendment right to due process; (b) The taking of his personal property without due process of law guaranteed under the Fourteenth Amendment; (c) Violation of his First Amendment rights of freedom to peaceably assemble and freedom of association by issuing a rule violation for playing cards with gang members; and (d) Violation of his Fourteenth Amendment right to equal protection of the laws when, among the various other inmates charged in

- 13 -

the incident giving rise to the Rule Violation Reports, he, alone, was punished by a reduction in custody level, transfer to another facility, and placement in the Security Threat Group program.

### 21 Days to Supplement Complaint

In addition, if the plaintiff wishes, he may – within 21 days – file a supplement to his complaint as to his claim regarding placement in isolation – setting forth: (1) the dates of his placement in isolation; (2) the duration of the various instances of his placement in isolation; (3) the defendants responsible for placing him in isolation; (4) the conditions he experienced during his time in isolation, (5) how often prison authorities review whether he may be removed from isolation, and (6) any other facts he believes may be relevant. If the plaintiff chooses not to supplement his allegations regarding isolation, then that claim will be dismissed.

***The deadline for the plaintiff to Show Cause – and (if he chooses) to supplement his complaint – is 21 days from the date of this order.***

**SO ORDERED**, this, the 14th day of January, 2026.

/s/   Jane M. Virden
UNITED STATES MAGISTRATE JUDGE