IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

GREGORY ANTHONY MALONE                                           PLAINTIFF

v.                                                      No. 3:24CV312-JMV

SUPERINTENDENT CHRIS LODEN, ET AL.                              DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Gregory Anthony Malone, who challenges the conditions of his confinement under 42 U.S.C. § 1983. That statute provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit.[1]

The plaintiff alleges that: (1) Multiple administrative errors led to a finding of guilt on several prison rule violations in contravention of his Fourteenth Amendment right to due process; (2) The defendants took his personal property without due process of law; (3) The defendants placed him in isolation for days and weeks at a time in violation of the Eighth Amendment prohibition against cruel and unusual punishment; (4) The defendants violated his First Amendment rights regarding freedom of association and the right to peaceably assemble by issuing a rule violation for playing cards with gang members; and (5) The defendants violated his Fourteenth Amendment right to equal protection of the laws when, among the various other inmates charged in the incident giving rise to the Rule

---

[1] *See* 42 U.S.C. § 1997e(a); *see also Williams v. Henagan,* 595 F.3d 610 (5th Cir. 2010) (PLRA applies when inmate is incarcerated at the time he files suit, even if he was released during pendency of suit).

Violation Reports, he, alone, was punished by a reduction in custody level, transfer to another facility, and placement in the Security Threat Group (STG) program.[2]

The court issued an order [20] for the plaintiff to show cause why the instant case should not be dismissed with prejudice for failure to state a claim upon which relief could be granted. The plaintiff responded to the order, and the matter is ripe for resolution. For the reasons set forth below, the plaintiff has not shown cause, and the instant case will be dismissed for failure to state a valid constitutional claim.

### Factual Allegations[3]

The plaintiff alleges that, during his stay at the Marshall County Correctional Facility, he received five prison Rule Violation Reports (RVR) as a result of a March 12, 2024, shakedown of his unit. He received RVR No. 2077888 (involvement in disruptive, assaultive, or criminal gang activity); RVR No. 2077570 (possession of major contraband); RVR No. 2077571 (possession of major contraband); RVR No. 2077572 (possession of major contraband); and RVR No. 2077573 (possession of major contraband). Other inmates were similarly charged.

RVR No. 2077570 was dismissed, and No. 2077573 was overturned on appeal. As such, only RVR Nos. 2077888 (gang activity), 2077571 (contraband), and 2077572 (contraband) are at issue in the instant case. Malone was found guilty of these three rule violations. Some of his personal

---

[2] "Security Threat Group" is a generic term comprising gangs and other groups that pose a danger to inmates or staff; most STGs within MDOC are gangs.

[3] The court has drawn most of the facts and discussion in this memorandum opinion from the show cause order – and will, at this stage of proceedings, assume that the plaintiff's factual allegations are true. The court will include additional facts from the plaintiff's response to the show cause order within the discussion of his claims below.

property was confiscated, allegedly as contraband.[4]  As a result of the guilty findings, he received the following punishments:

> RVR 2077888 – 60 days loss of canteen and visitation, as well as recommendation for reclassification;
>
> RVR 2077571 – 180 days loss of canteen and visitation;
>
> RVR 2077572 – 180 days loss of canteen and visitation.

Docs. 1-1, 1-3, 1-4.

As a result of the three rule violations, Malone complains that he, alone, faced additional administrative repercussions – reduction in custody classification, transfer to the Walnut Grove Correctional Facility (WGCF), and placement in the STG program – but the defendants did not take those actions against the other inmates.  He also alleges that he has been "locked in a cell 24 hours a day for days and weeks at a time" as part of the STG program.  Doc. 1 at 16.  He further alleges that, as a result of these events, he has suffered a mental decline, difficulty sleeping, and stress sufficient to cause a drop in heart rate requiring transfer to a hospital.

Malone alleges that the five named defendants were employed at MCCF and were involved in the investigation of the incident, as well as the prison disciplinary process:  (1) Superintendent Chris Loden; (2) Deputy Superintendent Brock Owings; (3) Corrections Investigation Division (CID) Frank Caswell; (4) Captain Stevens; and (5) Deanna Gray.  Malone has not named any defendants who took part in the events occurring at Walnut Grove Correctional Facility.

### Legal Claims

As noted, the plaintiff challenges the merits of the three remaining RVRs.  He also claims that

---

[4] For the purposes of this Show Cause Order only, the court will assume that the items confiscated were not contraband.

multiple administrative errors led to the finding of guilt – in violation of his right to due process. In addition, he claims that his personal property was taken from him without due process of law. He also claims that his placement in isolation violates the Eighth Amendment prohibition against cruel and unusual punishment. He claims that playing cards with other inmates cannot be prohibited because that would violate his First Amendment rights of freedom of assembly and freedom of association. Finally, he claims that the defendants' decision to take administrative action against him for the infractions, while not doing so against the others involved in the same events, violates his Fourteenth Amendment right to equal protection of the laws. The court will discuss these claims, in turn, below.

***Sandin v. Conner*: Due Process**
**Regarding Prison Rule Violations**

Under the ruling in *Sandin v. Conner*, 515 U.S. 472 (1995), the plaintiff has not set forth a valid claim for violation of the Due Process Clause regarding alleged administrative errors resulting in guilty findings on the three relevant RVRs.[5] Under *Sandin*, though

> [s]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause, . . . these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* 115 S. Ct. at 2300 (citations omitted).

In *Sandin*, the discipline administered the prisoner was confinement in isolation. *Id*. The court found that this discipline fell "within the expected parameters of the sentence imposed by a court of law," and "did not present the type of atypical, significant deprivation in which a State might

---

[5] A violation of prison rules involves only state law, not federal law. As such, the plaintiff's allegation of error in determining the merits of several appeals prison rule violations (a state law issue) does not give rise to a valid claim under 42 U.S.C. § 1983 (which involves only violations of federal law.)

conceivably create a liberty interest." *Id*. at 2301 and 2300. Therefore, neither the Due Process

Clause itself nor State law or regulations gave rise to a liberty interest providing the constitutional

procedural protections afforded prisoners.[6] *Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000)

(holding prisoner's thirty-day loss of commissary privileges and cell restriction due to disciplinary

action failed to give rise to due process claim).

In the present case, the plaintiff's punishment was loss of canteen and visitation – and a

recommendation that prison staff review his custody classification in light of the guilty finding. Such

punishment clearly falls "within the expected parameters of the sentence imposed by a court of law,"

*id*. at 2301, and "did not present the type of atypical, significant deprivation in which a State might

conceivably create a liberty interest." *Id*. Thus, these punishments were not severe enough to trigger

due process protections.[7] As such, the plaintiff's allegations regarding violation of his right to due

---

[6] Though not an exhaustive list, courts have recognized the following due process protections (which a prisoner does not enjoy unless the punishment is severe enough to trigger such protections under *Sandin*):

(1) Advanced written notice of the claimed violation;

(2) A written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken;

(3) The ability to call witnesses (which can be limited at the discretion of prison officials for security and other reasons);

(4) The ability to present documentary evidence.

*Wolff v. McDonnell*, 418 U.S. 539, 563-567 (1974). The ability to confront and cross-examine adverse witnesses is not a right enjoyed by prisoners. *Id*. at 567.

[7] The plaintiff complains that, as a result of the recommended classification review, he was reduced in custody and placed in the STG program. The custody classification process can be complex, as the Case Manager must identify and weigh various factors – not merely the finding of guilt on the rule violations. In this case, the disciplinary officer merely recommended a review of classification; hence, the results of that review do not constitute a part of the punishment. **Error! Main Document Only.**Further, inmates have neither a State nor a Federal property or liberty interest to a particular custodial classification, except in extreme circumstances. *Hewitt v. Helms*, 459 U.S.

process during the prison grievance process are without merit, and they should be dismissed with prejudice for failure to state a claim upon which relief could be granted.

### Taking of a Prisoner's Property Without Due Process of Law[8, 9]

The plaintiff also alleges that the defendants "stripped [him] of all personal property" without due process of law. Doc. 1, p. 15. He has not identified or described the individual items confiscated. Regardless of the items confiscated, as discussed below, this allegation also fails to state a valid § 1983 claim. The random and unauthorized deprivation of a prisoner's property by a state actor does not violate the prisoner's due process rights if the state provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). This rule, the *Parratt-Hudson* doctrine, provides "that no constitutional claim may be asserted by a plaintiff who was deprived of his liberty or property by negligent or intentional conduct of public officials, unless the state procedures under which those officials acted are unconstitutional *or* state law fails to afford an adequate post-deprivation remedy for their conduct." *Martin v. Dallas County, Tex.*, 822 F.2d 553, 555 (5th Cir. 1987) (emphasis added); *see also Hudson*, 486 U.S. at 533, *Daniels*, 474 U.S. at 330-31; *White v. Epps*, 411 Fed.Appx. 731 (5th Cir. 2011). Thus, the plaintiff may prevail on this claim only if he can show either that an unconstitutional state procedure was used to confiscate his property – or that there is no adequate post-deprivation remedy for the taking.

---

460, 468 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995).

[8] The court discusses separately the issue of due process protections regarding the taking of an inmate's *property* – because that analysis is distinct from the one regarding due process protections of *liberty* under *Sandin*.

[9] The plaintiff did not address the taking of his property in his response to the show cause order.

The plaintiff has not alleged that an unconstitutional prison procedure was used to confiscate his property. Hence, the threshold question as to his claim regarding the taking of his property is whether Mississippi law affords him an adequate post-deprivation remedy for his loss.

In most circumstances, suits against the Mississippi government would be controlled by the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-9 ("MTCA"). As to suits filed by prisoners, the MTCA states:

> (1) A governmental entity and its employees acting and within the course scope of their employment or duties shall not be liable for any claim:
>
> . . .
>
> (m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed.

Miss. Code Ann. § 11-46-9(1)(m).

At first blush, this statute would seem to foreclose any remedies the plaintiff may have under state law. However, the plaintiff's state court remedy for the taking of property arises directly from the Constitution of the State of Mississippi, which cannot be circumvented through a state statute. *Pickering v. Langston Law Firm, P.A.*, 88 So.3d 1269 (Miss. 2012). The unlawful taking of an inmate's property can violate Article 3, Section 17 of the Constitution of the State of Mississippi. *Bishop v. Reagans*, 2012 WL 1804623 (S.D. Miss.), *citing Johnson v. King*, 85 So.3d 307 (Miss.Ct.App. 2012). Article 3, Section 17 of the Mississippi Constitution reads:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use by the public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

The Mississippi Constitution is the ultimate authority regarding Mississippi state law issues.

- 7 -

The circumstances in *Johnson* are analogous those in the instant case. The prison officials in that case confiscated Johnson's drinking mug and disposed of it. *Johnson v. King*, 85 So.3d 307, 311-312 (Miss. App. 2012). Johnson had purchased the mug from the canteen with his own money. *Id*. The mug, as purchased, was not considered contraband, and Johnson had not modified the mug in such a way to turn it into contraband. *Id*. The Mississippi Court of Appeals held that, under these circumstances, the taking of Johnson's mug violated the Mississippi Constitution and that prison officials had to either replace the mug or compensate Johnson for the fair value of the mug. *Id*.

Those facts mirror the ones in the present case. Prison officials confiscated Malone's property and did not return it, finding it to be contraband. As such, the plaintiff in this case has an adequate remedy under state law, and his claims for the taking of his property without due process of law must be dismissed.

### First and Fourteenth Amendment Right to Freedom of Peaceable Assembly in the Prison Context

By the very nature of incarceration, prisoners enjoy far fewer rights and privileges than do free world citizens:

> Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration. *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Shaw v. Murphy,* 532 U.S. 223, 229, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001). And, as our cases have established, freedom of association is among the rights least compatible with incarceration. *See Jones, supra,* at 125–126, 97 S.Ct. 2532; *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Some curtailment of that freedom must be expected in the prison context.

*Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003). This principle informs the remaining discussion of the right to peaceably assemble.

The right to peaceably assemble may be found in the First Amendment to the Constitution: "Congress shall make no law … abridging … the right of the people peaceably to assemble …." U.S.

Const. am. I. Justice Marshall expounded upon this principle:

> When a citizen is "in a place where [he] has every right to be," *Brown v. Louisiana*, 383 U.S. 131, 142, 86 S.Ct. 719, 724, 15 L.Ed.2d 637 (1966) (opinion of Fortas, J., joined by Warren, C.J., and Douglas, J.), he cannot be denied the opportunity to express his views simply because the government has not chosen to designate the area as a forum for public discussion.
>
> While the right to conduct expressive activities in such areas as streets, parks, and sidewalks is reinforced by their traditional use for purposes of assembly, *Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939) (opinion of Roberts, J., joined by Black, J.), that right ultimately rests on the principle that "one who is rightfully on a street which the state has left open to the public carries with him there as elsewhere the constitutional right to express his views in an orderly fashion." *Jamison v. Texas,* 318 U.S. 413, 416, 63 S.Ct. 669, 671, 87 L.Ed. 869 (1943) (emphasis added). Every citizen lawfully present *in a public place* has a right to engage in peaceable and orderly *expression* that is not incompatible with the primary activity of the place in question, whether that place is a school, a library, a private lunch counter, the grounds of a statehouse, the grounds of the United States Capitol, a bus terminal, an airport, or a welfare center.

*United States v. Grace*, 461 U.S. 171, 184–85, 103 S. Ct. 1702, 1710–11, 75 L. Ed. 2d 736 (1983) (emphasis added) (footnotes omitted) (Marshall, J., concurring).

Thus, two defining characteristics of the right to peaceably assemble are the intention to express oneself – and to do so in a public place. *Id*. This freedom is not, however, without limits, as "[t]he basic right to freedom of speech and freedom to peaceably assemble must, on occasions, be subordinated to other values and considerations." *Clemmons v. Cong. of Racial Equal.*, 201 F. Supp. 737, 747–48 (E.D. La. 1962), *citing Dennis v. United States*, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137, 342 U.S. 842, 72 S.Ct. 20, 96 L.Ed. 636 and, 355 U.S. 936, 78 S.Ct. 409, 2 L.Ed.2d 419; *Poulos v. State of New Hampshire*, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed.2d 1105, 30 A.L.R.2d 987. This principle applies with greater force in the prison context.

In the present case, the plaintiff's allegations fail to state a claim regarding the right to peaceable assembly because: (1) a prison is not a public place, and (2) playing cards is not a means to

express his views. Hence, the allegations simply do not describe a violation of the right to peaceable assembly.

In addition, even if the allegations implicated such a claim, prison officials have wide latitude to restrict inmates' liberty in this way. *Overton, supra*. Indeed, courts must give great deference to prison officials' decisions as to prison security and other matters regarding the day-to-day operation of the prison. *See Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir. 2003) ("Prison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order." (citation omitted)). Prison officials have a strong institutional security interest in preventing gang members from gathering. Further, the court is loath to second-guess prison officials' determinations regarding which inmates are members of a gang and which gatherings and activities by those members may pose a security threat.

For these reasons, the facts of this case do not implicate the right to peaceably assemble, and this allegation must be dismissed for failure to state a valid constitutional claim.

### First and Fourteenth Amendment Right to Freedom of Association

The plaintiff's allegations regarding violation of the right to freedom of association must likewise be dismissed. Freedom of association is not explicitly enumerated in Constitution; however, it is a right included within the "penumbra" of the First Amendment. *See McDonald v. Grand Traverse County Election Comm'n*, 255 Mich. App. 674, 662 N.W.2d 804 (2003).

Freedom of association comprises: (1) the right to associate to achieve economic goals or other goals not connected with a constitutional right; (2) the right to enter into and maintain certain *intimate* human relationships; and (3) a right to associate for the purpose of engaging in those activities protected by the First Amendment, including speech, assembly, petition for the redress of grievances, and the exercise of religion. *See* The Three Separate Aspects of the Right of Association,

5 Treatise on Const. L. § 20.41(b); *see also* 16A Am. Jur. 2d Constitutional Law § 578. The right to freedom of association operates on a continuum, from least protected to most protected forms of association. The Continuum of Associational Rights, 5 Treatise on Const. L. § 20.41(e). Association for business interests (or other concerns not involving constitutional rights) require the least protection, while association for intimate relationships – or to exercise a constitutional right – are most protected. *Id.* The right of association may appear in many forms. *Id*.

In this case, Malone's allegations do not state a valid claim for violation of his right to freedom of association. One does not associate with others to play cards in order to achieve economic or other goals, to enter into or maintain an intimate relationship (such as marriage or family connections), or to engage in First Amendment activities. As such, the plaintiff's allegations do not fall within the ambit of freedom of association. In addition, as with right to freedom to peaceably assemble, prison officials may severely restrict an inmate's freedom of association. *See Overton, supra.* Indeed, "freedom of association is among the rights *least* compatible with incarceration." *Id*. (emphasis added)

As with Malone's claim regarding the right to freedom of assembly, discussed above, the court will afford wide deference to prison officials' decisions regarding the gathering of inmates – and will not second-guess officials' determination of which inmates are gang members. Malone's allegations do not constitute a claim for freedom of association, and, even if they did, the court must give great deference to prison officials' decisions regarding institutional security. For these reasons, the plaintiff's allegations regarding violation of his right to freedom of association must fail.

### Equal Protection

The plaintiff alleges that the defendants violated his right to equal protection of laws because he received a more severe punishment for rule violations than other inmates involved in the same

activity.  Doc. 1, p. 15-16.  As discussed below, these allegations fail to state a valid equal protection claim.

Put simply, the equal protection clause directs states to treat all similarly situated persons alike. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).  A state government may violate the Equal Protection Clause only by intentional discrimination.  *Lavernia v. Lynaugh,* 845 F.2d 493, 496 (5th Cir.1988).  "Discriminatory purpose . . . implies more than intent as violation or as awareness of consequences[.] . . .  It implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group[.]" *Id.* (internal quotations, citations, and footnote omitted) (emphasis in opinion).  A violation of the equal protection clause can occur only when the governmental action in question classifies or distinguishes between two or more relevant persons or groups.  *Brennan v. Stewart,* 834 F.2d 1248, 1257 (5th Cir.1988).  To state a claim under the Equal Protection Clause, a plaintiff suing under 42 U.S.C. § 1983 must allege that a state actor intentionally discriminated against him *because of his membership in a protected class*.  *Williams v. Bramer*, 180 F.3d 699 (5th Cir. 1999).

The plaintiff's equal protection claim in this case must therefore fail, as he has not identified "two or more relevant persons or groups" which the government has classified and treated differently – and to the plaintiff's detriment.  *Vera v. Tue*, 73 F.3d 604, 609-10 (5th Cir. 1996).  The only difference between Malone and the others was their punishments for events giving rise to the rule violations.  He has not alleged that he was a member of a protected class – and that he was treated more harshly than people who are not members of that protected class.  Nor has he alleged that "the [defendants] singled out a particular group for disparate treatment and selected [the] course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group[.]" *Lavernia supra*.

- 12 -

For these reasons, the plaintiff's allegations regarding different punishments for inmates involved in the same incident will be dismissed for failure to state a claim upon which relief could be granted.

**Placement in Isolation**

The plaintiff alleges that, during his stay at WGCF, he was placed in isolation ("behind a steel door") 24 hours per day for weeks and months at a time. Doc. 1, p. 16. Malone did not initially describe the conditions of his placement in isolation; however, he did flesh out his allegations in response to the court's show cause order. In Phase 1 of the STG program at WGCF, for 6 months he remained in isolation nearly 24 hours per day with no recreation – and was placed in restraints each time he was taken from his cell. Doc. 22, p 6-8. He could shower three times per week. *Id.* He did not receive supplies for cleaning his cell; other inmates occasionally flooded their cells or set fires; staff sprayed unruly inmates with chemical agents to gain their compliance (making the air hard to breathe). *Id*. In addition, some inmates attempted to hang themselves to escape the harsh conditions. *Id*. As a result of his placement in this environment, Malone was prescribed medication to treat stress, depression, and anxiety, and he still takes the medication. *Id*.

In Phase 2 of the STG program, which lasted 3 months, Malone could leave his cell for 4 hours each day. *Id*. During Phase 3, also lasting 3 months, he could leave his cell for 8 hours per day. *Id*. During Phases 2 and 3, he experienced numerous shakedowns "with staff running around shooting guns and forcing everyone face-down on the floor." *Id.*, p. 7-8. Upon completion of Phase 3, Malone was "forced into a gang class, Moral Compass." *Id*. Staff explained to Malone that, if he did not attend the class, "he'd be placed back behind the steel door and begin Phase-1 over again." *Id*., p. 8. Though he completed the class in 10 weeks, he remains at Walnut Grove, though other inmates who completed the program have been transferred to other facilities. *Id*.

- 13 -

In this case, a variety of factors bear on the resolution of Malone's claim regarding isolation. Examples of conditions to consider are: whether the cell had a solid door; whether he was able to communicate with other inmates while in his cell; whether he had a chance to interact with other inmates during any time out of his cell; whether he had visitation; whether he enjoyed any privileges or programs (religious gatherings, education or vocation instruction, access to a telephone, access to reading materials, etc.); how often he was able to shower; and other considerations. *See Bailey v. Fisher*, 647 F. App'x 472, 475 (5th Cir. 2016) (not reported). The court may also consider the duration and approximate dates of each instance of his confinement in isolation as part of the analysis. *Id.* Other factors to consider are whether the defendants conducted periodic reviews to decide whether he could be placed in less restrictive housing – and whether his placement in isolation potentially affected his eligibility for parole. *See Wilkinson v. Austin*, 545 U.S. 209, 224, 125 S. Ct. 2384, 2395, 162 L. Ed. 2d 174 (2005).

The Fifth Circuit suggests that two-and-a-half years may operate as a threshold to determine whether placement in isolation is atypical. *Wilkerson v. Goodwin*, 774 F.3d 845, 855 (5th Cir. 2014). As the plaintiff's placement in the STG Program lasted just over a year, it may well be that this allegation would fail to state a claim "under even the most isolated of conditions." *See Bailey, supra*, at 476. Indeed, in Phases 2 and 3, Malone could spend four to eight hours out of his cell; hence, it appears that he was no longer in isolation during that time. The court must also consider that, during the time Malone was housed in isolation for the STG Program, staff continually assessed his progress. Upon satisfactory completion of each Phase, Malone was placed in less restrictive custody. Malone was never left in "limbo" regarding the duration of his placement in isolation because, through his actions he was able to earn his way into more favorable custody conditions.

Finally, none of the named defendants in this case were working at WGCF during the relevant period; as such, none of them were involved in the plaintiff's claim regarding isolation. As the plaintiff has not identified a defendant who may be responsible for the length and conditions of his placement in isolation, that claim must be dismissed.

<strong>Conclusion</strong>

For the reasons set forth above, the instant case will be dismissed with prejudice for failure to state a claim upon which relief could be granted. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 1st day of April, 2026.

/s/   Jane M. Virden
UNITED STATES MAGISTRATE JUDGE